

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| ALONZO COLUMBUS JETER, III,<br>  Plaintiff,<br><br>vs.<br><br>JOSEPH DERHAM COLE, SR.; J. MARK HAYES; RALPH KEITH KELLY; ALAN MCCRORY WILSON; CHELSEY FAITH MARTO; BRANDY W. MCBEE; JEAN HOEFER TOAL; DONALD W. BEATTY; ROGER L. COUCH; DON A. THOMPSON; JULIE COLEMAN; and JORDAN ADRIAN COX,<br>  Defendants. | Civil Action No.: 7:23-97-MGL |

**ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER,**
**GRANTING PLAINTIFF'S MOTION FOR CLARITY,**
**DENYING PLAINTIFF'S MOTION FOR JUDICIAL NOTICE,**
**ADOPTING THE REPORT AND RECOMMENDATION,**
**AND DEEMING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME**

### I.    INTRODUCTION

Plaintiff Alonzo Columbus Jeter, III (Jeter), who is representing himself, filed this action against Defendants Joseph Derham Cole, Sr. (Judge Cole); J. Mark Hayes (Judge Hayes); Ralph Keith Kelly (Judge Kelly); Alan McCrory Wilson (Wilson); Chelsey Faith Marto (Marto); Brandy W. McBee (McBee); Jean Hoefer Toal (Justice Toal); Donald W. Beatty (Justice Beatty); Roger L. Couch (Judge Couch); Don A. Thompson (Thompson); Julie Coleman (Coleman); and Jordan Adrian Cox (Cox), alleging violations of his constitutional rights under 42 U.S.C. § 1983 (Section 1983).

Pending before the Court are Jeter's appeal of the Magistrate Judge's order denying his motion for attachment of exhibits; Jeter's motions for clarity and judicial notice; the Report and Recommendation (Report) of the United States Magistrate Judge recommending the Court dismiss this action without prejudice, without leave to amend, and without issuance and service of process; and Jeter's motion for an extension of time to file objections to the Report. The order and Report were made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth a comprehensive recitation of the facts, which the Court finds unnecessary to repeat in full. Nonetheless, for context, the Court will briefly summarize the relevant factual and procedural background.

In 2004, Jeter pled guilty to two counts of simple possession of crack cocaine, first offense (the 2004 convictions). Jeter claims he pled guilty only after his plea counsel (Thompson), the prosecutor, and Judge Couch agreed his "convictions would merge and would be entered in as single first conviction for the purposes of any recidivism-based enhancements on any future charges [he] may face." Second Amended Complaint at 20. Jeter failed to appeal this conviction.

In 2015, Jeter pled guilty to two counts of distributing methamphetamine, second offense; two counts of distributing methamphetamine within proximity of a park or school; and one count of trafficking in methamphetamine, second offense (the 2015 convictions). At the plea hearing on the 2015 convictions, the prosecutor identified a 2005 conviction for possession of a controlled substance and a 2013 conviction for possession of a controlled substance, second offense, as the

2

basis for enhancing the charges and charging Jeter as a repeat offender. Jeter was sentenced to fifteen years of imprisonment. His projected release date is February 26, 2027.

In 2016, Jeter filed an application for post-conviction relief (PCR) (the 2016 PCR action), claiming his 2015 plea counsel was ineffective in failing to challenge the state's enhancements of his charges. Jeter argued the prosecutor at the 2015 plea hearing mistakenly referred to a 2005 conviction rather than the 2004 convictions, which Jeter claims merged into a single first offense that was too old to serve as an enhancement. *See* S.C. Code Ann. § 44-53-470(A)(3) (explaining an offense involving methamphetamine is considered a second offense where "the offender has been convicted within the previous ten years of a first violation of a controlled substance offense provision other than a marijuana offense provision"). The state, represented by Coleman, denied any merging agreement and opposed Jeter's application.

The PCR court ultimately found 2015 plea counsel's failure to challenge the enhancements constituted sufficient performance. Even if plea counsel was deficient, however, the PCR court concluded Jeter was unprejudiced because the 2004 convictions were separate and distinct such that one constituted a "second or subsequent" offense for enhancement purposes. *Id.* § 44-53-470(A)(4) (explaining an offense involving methamphetamine is considered a second offense where "the offender has at any time been convicted of a second or subsequent controlled substance offense provision other than a marijuana offense provision").

In 2017, Jeter filed another PCR application (the 2017 PCR action), claiming breach of the alleged merging agreement as to his 2004 convictions. The state, represented by Cox, moved to dismiss the application. Judge Cole issued a conditional order of dismissal, finding the action was barred by the statute of limitations and the doctrine of laches and otherwise finding Jeter failed to state a cognizable claim. Jeter thereafter amended the application, but Judge Kelly dismissed the

3

amended application for the reasons set forth in the conditional order. Jeter unsuccessfully appealed.

In 2019, Jeter filed his final PCR application (the 2019 PCR action), asserting Thompson was ineffective in failing to ensure the terms of the 2004 pleas were unambiguously written on the sentencing sheets to reflect the purported merging agreement.

One month later, Jeter filed in this Court a petition for writ of habeas corpus under 28 U.S.C. § 2254 and a motion to stay the petition pending resolution of the 2019 PCR action. The Magistrate Judge recommended the Court dismiss the petition for lack of jurisdiction or, alternatively, hold the petition in abeyance until the 2019 PCR action could be resolved. The Court adopted the recommendation and dismissed the petition without prejudice for lack of jurisdiction.

Thereafter, in the 2019 PCR action, Marto opposed Jeter's application on behalf of the state, and Judge Hayes issued a conditional order of dismissal. Jeter again objected and amended his application. Judge Cole subsequently dismissed the amended application, finding Jeter was unentitled to relief based upon newly discovered evidence and further finding the action was successive, barred by the statute of limitations, and prohibited by res judicata.

As to Judge Cole's finding of res judicata, he determined Jeter simply reframed the breach of merging agreement claim raised to, and rejected by, the court in the 2017 PCR action as an ineffective assistance claim in the 2019 PCR action. Jeter filed a motion to alter or amend the judgment and a motion for appointment of counsel, both of which Judge Cole denied. Jeter unsuccessfully appealed.

In 2023, Jeter filed this action, alleging violations of his constitutional rights under Section 1983. Before turning to the merits, the Court will briefly summarize Jeter's allegations.

Jeter's claims against Coleman, Cox, Marto, and Wilson all stem from their involvement in his 2016, 2017, and 2019 PCR actions.

Jeter alleges Coleman "frustrated [his] 2004 [p]lea [in the 2016 PCR action] by denying any existence of a merging agreement." Second Amended Complaint at 44.

Jeter next contends Cox and Marto violated his First and Fourteenth Amendment rights in the 2017 and 2019 PCR actions, respectively, by assuming a judicial role, conspiring against him, independently determining he failed to present genuine issues of material fact or law and then using those determinations to deny appointment of counsel, communicating with judges ex parte to present proposed orders and achieve summary dismissal, neglecting to schedule hearings on urgent motions, and otherwise controlling the expediency of the cases. *Id.* at 44–49, 64–65.

Jeter further maintains Wilson, as the South Carolina Attorney General, bears supervisory liability for Cox's decisions in the 2017 PCR action. *Id.* at 61. Although Jeter ambiguously mentions Wilson's "subordinates[,]" *id.* at 62, he fails to specifically argue Wilson bears supervisory liability for the actions of Coleman and Marto.

Jeter's claims against Judges Hayes, Kelly, and Cole arise from their actions while presiding over the 2017 and 2019 PCR actions. Jeter posits the judges violated his First and Fourteenth Amendment rights by failing to adequately oversee the actions of the Clerk of Court for Cherokee County (McBee), neglecting to independently adjudicate all issues in his cases, declining to make independent determinations as to appointment of counsel, partaking in ex parte communications, refraining from ruling or scheduling hearings on matters filed by pro se PCR applicants, allowing Wilson's office to serve as the scheduler in PCR actions, and placing orders in the hands of adversaries. *Id.* at 50–58.

Closely related to Jeter's claims against Judges Hayes, Kelly, and Cole are his claims against McBee. Jeter contends McBee violated his First and Fourteenth Amendment rights during the 2017 and 2019 PCR actions by failing to ensure his pleadings and motions were scheduled before summary dismissal; deeming as final the state's determination he was unentitled to appointment of counsel; neglecting to instruct him on seeking a written order from the Chief Judge for Administrative Purposes; refraining from providing notice of hearings, scheduling conferences, and pretrial conferences; receiving signed orders directly from Wilson and his subordinates rather than from the judges; and allowing the state to control its own cases. *Id.* at 58–61.

Jeter's claims against Justice Toal stem from her entry of an administrative order vesting Wilson with "unfettered control" of the state's purportedly unconstitutional PCR procedures. *Id.* at 66–67; *see* Administrative Order Re: Appointment of Counsel in Post-Conviction Relief Cases Before the Circuit Court (S.C. Sup. Ct. Oct. 6, 2008).

Next, Jeter avers Justice Beatty bears supervisory liability, as he "has essentially provided tacit authorization of the actions of the Attorney General, Assistant Attorney General, Clerk of Court, and the Chief [Judges for Administrative Purposes] with regard to their conspiratory actions and unconstitutional conduct." *Id.* at 68. Jeter asserts Justice Beatty knew about, but was deliberately indifferent to, ongoing constitutional violations. *Id.* Moreover, he emphasizes Justice Beatty's failure to rescind, alter, or amend Justice Toal's administrative order.

Jeter further contends Thompson violated his Sixth Amendment right to effective assistance of counsel by failing to ensure the sentencing sheets for the 2004 convictions "clearly and unambiguously reflected the merging agreement." *Id.* at 71.

6

Finally, Jeter explains he named Judge Couch, the judge who presided over the 2004 plea hearing, as a Defendant solely to ensure he could bring his ineffective assistance claim against Thompson.  *Id.* at 73.

When Jeter moved to amend his complaint for a second time, he contemporaneously filed a motion for attachment of exhibits, requesting the Court consider a 723-page exhibit, which he submitted as an exhibit to the original complaint, and an unspecified CD/DVD.

The Magistrate Judge denied Jeter's motion for attachment of exhibits in a written order. She explained the 723-page exhibit contained copies of Jeter's state court records, which were already filed in his federal habeas cases and are thus subject to judicial notice.  Further, she noted the 723-page exhibit is unnecessary for the Court's disposition of this case, as the action is subject to summary dismissal as set forth in the Report.

On July 8, 2024, the Clerk of Court docketed Jeter's appeal of the Magistrate Judge's order denying his motion for attachment of exhibits and his separate motions for clarity and judicial notice.  Jeter thereafter filed a motion for extension of time to object and his objections.

### III.    MOTION FOR ATTACHMENT OF EXHIBITS

#### A.    *Standard of Review*

Jeter's motion for attachment of exhibits is a nondispositive motion.  Therefore, the Court will affirm the order unless it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

### B.     *Discussion and Analysis*

Jeter insists the 723-page exhibit contains records that are either unfiled or filed in cases other than those identified by the Magistrate Judge. Further, Jeter maintains the Magistrate Judge "failed to address or acknowledge" his references to the CD/DVD.

The Clerk of Court has yet to receive the CD/DVD. Even still, the Court agrees with the Magistrate Judge the 723-page exhibit and CD/DVD are unnecessary, as this case is subject to summary dismissal for the reasons set forth below. Accordingly, the Court will affirm the Magistrate Judge's denial as neither clearly erroneous nor contrary to law and proceed to consider the issues raised in Jeter's other motions and objections.

## IV.    MOTIONS FOR CLARITY AND JUDICIAL NOTICE

Jeter's motion for clarity asks the Court to specify whether he needs to refile the proposed second amended complaint, which he attached to his motion to amend the complaint, as a separate pleading. Because the Magistrate Judge granted Jeter's motion to amend and directed the Clerk of Court to file the proposed complaint as a separate entry, the Court will grant Jeter's motion and clarify it is unnecessary for him to refile the second amended complaint.

Jeter's motion for judicial notice requests the Court to take judicial notice of the 723-page exhibit and CD/DVD referenced above, as well as the record in *Jeter v. South Carolina*, No. 2024-CP-40-1737 (Richland Cnty. Ct. Com. Pl.). As to the CD/DVD, the Court is unable to take judicial notice of these items, as the Clerk of Court has yet to receive them. And, for the reasons discussed below, the Court determines the 723-page exhibit and state court record are unnecessary to the disposition of this case. Accordingly, the Court will deny Jeter's motion for judicial notice.

## V.   THE REPORT

### A.   *Standard of Review*

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court, however, need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections, the Court reviews the Report only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record to accept the recommendation'").

### B.   *Discussion and Analysis*

Although Jeter raises sixteen objections to the Report, the Court's ruling on two objections will deem the remaining objections moot. The Court will therefore address only those dispositive objections.

#### 1.   *Whether the Magistrate Judge erred in determining Thompson and Judge Couch are subject to summary dismissal*

Jeter first objects to the Magistrate Judge's determination Thompson and Judge Couch are subject to summary dismissal. Jeter maintains he named Thompson and Judge Couch as

9

Defendants for the limited purpose of asserting ineffective assistance claim under *Griffin v. Baltimore Police Department*, 804 F.3d 692 (4th Cir. 2015).  As the Court will explain below, Jeter contends *Griffin* permits him to bring Section 1983 claims against Thompson and Judge Couch because he "could not, as a practical matter, [have sought] habeas relief while in custody" on the 2004 convictions.  Objections at 16 (alteration in original).

Although Jeter fails to specify the type of relief requested as to Thompson and Judge Couch, the second amended complaint seeks only equitable relief and fails to set forth any amount of actual or punitive damages for the acts alleged.  The Court will therefore presume Jeter, in asserting an ineffective assistance claim, seeks equitable relief in the form of an unenhanced sentence.

By challenging the 2004 convictions, which served to enhance the 2015 convictions, Jeter is indirectly challenging the fact or duration of his current confinement.  The Supreme Court, however, has explained "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [Section 1983]."  *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).

Jeter maintains *Griffin* set forth a "narrow exception" to the *Heck* bar that would permit him to bring Section 1983 claims against Thompson and Judge Couch because he "could not, as a practical matter, [have sought] habeas relief while in custody" on the 2004 convictions.  Objections at 13, 16 (alteration in original).  This exception is originally derived from *Wilson v. Johnson*, 535 F.3d 262, 268 (4th Cir. 2008) (allowing a plaintiff to bring Section 1983 claims even if successful resolution of those claims would necessarily undermine the validity of the plaintiff's prior convictions so long as the plaintiff "could not, as a practical matter, [have sought] habeas relief"

while in custody on such convictions). And, it applies only where something beyond the plaintiff's control prevented him from seeking habeas relief while in custody. *Wilson*, 535 F.3d at 268.

Here, Jeter argues the *Wilson* exception allows him to bring an ineffective assistance claim because the "ineffective assistance of [Thompson] and gamesmanship of the [s]tate . . . made it impractical for [him] to have had [an] opportunity or reason to seek [PCR] prior to the expiration of the statute of limitations for bringing PCR claims in South Carolina." Objections at 13, 16. *Wilson*, however, focuses on a plaintiff's ability to seek habeas relief. The Court will therefore first consider whether Jeter "could not, as a practical matter, [have sought] habeas relief" while in custody on the 2004 convictions. *Wilson*, 535 F.3d at 268.

The trial court sentenced Jeter to three years of imprisonment on the 2004 convictions, to be served concurrently, suspended upon time served to three years of probation. Jeter thus had three years within which to seek habeas relief, yet he failed to do so. Jeter contends this failure was due to the combined effect of Thompson's ineffectiveness and the state's gamesmanship. But, Thompson's representation ceased at final judgment, *see* Rule 602(e)(1), SCACR ("Trial counsel, whether retained, appointed, or Public Defender, shall continue representation of an accused until final judgment[.]"), and Jeter's allegations regarding the state's purported gamesmanship began in 2016.

Even still, Jeter has failed to set forth a convincing argument as to how the state's alleged gamesmanship actually prevented him from seeking habeas relief. The Court is thus unconvinced Jeter "could not, as a practical matter, [have sought] habeas relief while in custody" on the 2004 convictions. Objections at 13, 15 (alteration in original). In other words, Jeter is unable to circumvent the *Heck* bar by raising a belated challenge to his 2004 convictions.

Even assuming the *Wilson* exception extends to Jeter's alleged inability to seek PCR, for these same reasons, the Court is unpersuaded it was "impractical for [Jeter] to have had opportunity or reason to seek [PCR] prior to the expiration of the statute of limitations for bringing PCR claims in South Carolina." *Id.* at 13, 16.

Inasmuch as the *Wilson* exception is inapplicable here, Jeter's claims against Thompson and Judge Couch are barred as their success would necessarily demonstrate the invalidity of the 2004 and 2015 convictions. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's [Section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

> 2. *Whether the Magistrate Judge erred in determining Jeter lacks standing to bring his claims against the remaining Defendants*

Jeter further objects to the Magistrate Judge's determination he lacks standing to bring his claims against Judges Cole, Hayes, and Kelly; Justices Toal and Beatty; Wilson; Coleman; Cox; Marto; and McBee (collectively, the remaining Defendants).

Regarding these claims, the Magistrate Judge concluded Jeter failed to set forth allegations demonstrating "there is a sufficient likelihood that he will be affected by the alleged unlawful PCR procedures in the future." Report at 16. Jeter, however, maintains "there does clearly exist sufficient likelihood that [he] will be affected by the [remaining] Defendant[s'] unconstitutional and unlawful conduct when he file[s] his successive application for [PCR] in the future." Objections at 9.

The "irreducible constitutional minimum of standing contains three elements[,]" the first of which is "the plaintiff must have suffered an injury in fact—an invasion of a legally protected

12

interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted) (quoting *Whitmire v. Arkansas*, 495 U.S. 149, 155 (1990)).  Because Jeter's claims against the remaining Defendants fail to challenge his own convictions, sentences, or PCR proceedings, he is unable to demonstrate an injury in fact.  Inasmuch as Jeter seeks to challenge a forthcoming PCR application, his interest is "conjectural or hypothetical" rather than "actual or imminent[.] *Id.* Accordingly, the Court will overrule this objection, as well.

To the extent the Magistrate Judge concluded the remaining Defendants are entitled to judicial, quasi-judicial, and prosecutorial immunity, this conclusion was erroneous. *See Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975) (explaining judicial and quasi-judicial immunity "do[] not extend to plaintiff's action for injunctive and declaratory relief under Section 1983" (quoting *Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir. 1973))); *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 736–37 (1980) (indicating prosecutorial immunity applies only in actions for monetary damages).  But, as explained above, Jeter's claims against these Defendants are nevertheless subject to summary dismissal for lack of standing.

## VI.  CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court the Magistrate Judge's ruling denying Jeter's motion for attachment of exhibits is **AFFIRMED**, Jeter's motion for clarity is **GRANTED**, and Jeter's motion for judicial notice is **DENIED**.

Further, after a thorough review of the Report and record in this case under the standard set forth above, the Court overrules Jeter's objections and adopts the Report to the extent it does not contradict this Order.  This matter is therefore **DISMISSED WITH PREJUDICE**.

Because the Court considered Jeter's objections to the Report, his motion for extension of time within which to file such objections is necessarily **DEEMED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 30th day of January 2025, in Columbia, South Carolina.

                                           s/ Mary Geiger Lewis
                                           MARY GEIGER LEWIS
                                           UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

Jeter is hereby notified of his right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.